UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549,

                    Plaintiff,

v.

DANIEL FONGNIEN CHIANG and
EVA YI-FEN CHEN,

                    Defendants.

Civil Action No.

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission") alleges for its Complaint as follows:

### SUMMARY

1. This is an insider trading case. In 2005, Defendant Daniel Chiang ("Chiang"), then a co-chairman of SINA Corporation ("SINA"), aided and abetted by his spouse, Defendant Eva Chen ("Chen"), directed the short sale of 70,000 SINA shares after learning that SINA would announce a decline in its revenues. At the time of the short sale, news of the revenue decline was both material and non-public. Chiang owed a duty of trust and confidence to SINA which required him to maintain the information as confidential and not use it to buy or sell SINA securities until it was announced to the public. The short sales, which Chiang directed through an account controlled by his spouse with her knowledge and consent, breached his duty of trust and confidence to SINA and violated federal securities law. As a result of their conduct, the defendants realized $257,833 in unlawful trading profits.

2. By engaging in the conduct described above, Chiang violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §

240.10b-5] promulgated thereunder, and Chen aided and abetted Chiang's violations, and unless enjoined, they will continue to engage in transactions, acts, practices, and courses of business similar to those alleged in this complaint.

3. With respect to Chiang, the Commission seeks an injunction against future violations of Section 10(b) and Rule 10b-5 thereunder, disgorgement of ill-gotten gains, prejudgment interest thereon, a statutory civil monetary penalty, and a bar for a period of five years from serving as an officer or director of a public company.

4. With respect to Chen, the Commission seeks an injunction against future violations of Section 10(b) and Rule 10b-5 thereunder, and a statutory civil monetary penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action, pursuant to authority conferred by Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e) and 78aa].

6. Venue lies in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa]. Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the District of Columbia.

## THE DEFENDANTS

7. Defendant Daniel Fongnien Chiang, age 49, is a citizen of Taiwan and the husband of Eva Yi-Fen Chen. During the relevant period, Chiang was the co-chairman of SINA Corporation's Board of Directors.

8. Defendant Eva Yi-Fen Chen, age 47, is a Taiwanese citizen and Legal Permanent Resident of the U.S., who lives in Pasadena, California. Chen is the CEO of Trend Micro Incorporated, and is the wife of Chiang.

**RELATED ENTITY**

9. SINA Corporation, which is headquartered in Shanghai, China, and which maintains an office in San Mateo, California, is an online media company and value-added information service provider for Chinese communities worldwide. SINA's common stock is registered with the Securities and Exchange Commission pursuant to Section 12(g) of the Exchange Act, and trades on the Nasdaq National Market System.

**FACTUAL ALLEGATIONS**

10. During the relevant time period, Chiang served as SINA's co-Chairman, and in that capacity he was entrusted with and had access to SINA's internal financial performance forecasts before that information was released to the public.

11. As an employee and director of SINA, Chiang owed SINA a duty of fiduciary trust and confidence. In addition, at all times while co-chairman of SINA, Chiang was aware of, and subject to, SINA's insider trading policy for employees, which explicitly prohibited employees from buying or selling SINA securities while having knowledge of material non-public information and from disclosing such information to others. The policy specifically defined material information to include "projections of future earnings or losses." In addition, SINA's insider trading policy specifically stated that "no officer or director may ever make a short sale of the company's stock."

12. For each of the eight consecutive quarters leading up to the start of SINA's 2005 fiscal year, the company had improved its quarter-over-quarter revenues, and for the fiscal years that ended in December of 2003 and 2004, the company had registered record year-over-year revenues.

13. In December 2004 and January 2005, SINA executives learned of two events that would negatively impact the company's 2005 first quarter revenues and likely end SINA's pattern of consistent improvements to its quarter-over-quarter and year-over-year revenue results. First, on December 31, 2004, SINA received notice from mobile telephone provider China Mobile that it had

instituted billing changes. The likely effect was that SINA would receive reduced revenue from mobile users for certain types of value-added services. Second, on January 24, 2005, SINA learned that the Chinese State Administration of Radio, Film and Television instituted changes that would restrict the manner in which SINA had heretofore advertised certain mobile value-added services on Chinese media.

14.     Between January 26, 2005, and February 1, 2005, SINA personnel performed an internal analysis and assessed the extent to which the China Mobile and the Chinese State Administration policy changes would affect the company's future financial results. SINA personnel conducting the internal analysis determined that the company's revenues relating to mobile value-added services, which comprised approximately sixty percent of the company's forth quarter 2004 revenues, could be significantly lower in the first quarter of 2005, which was scheduled to end on March 31, 2005. Specifically, the internal analysis revealed that first quarter 2005 mobile value-added revenues could be off by as much as twenty to thirty percent from the previous quarter, resulting in a twelve to eighteen percent decline in total revenues for the quarter.

15.     On February 3, 2005, SINA's Board of Directors, including Chiang, received an internal email that attached SINA's 2005 confidential operating plan. The operating plan incorporated the internal analysis and its conclusions as to SINA's revenue projections for the first quarter of 2005.

16.     On February 4, 2005, Chiang participated in a SINA Board meeting during which the Board discussed the recent policy changes and how they would affect the company's first quarter 2005 financial results.

17.     SINA's official 2005 first quarter financial performance projections, which were an outcome of the February 4 board meeting and the internal analysis, were scheduled to be released publicly after the close of the market on February 7, 2005.

18. Shortly after the conclusion of the February 4 SINA Board meeting, Chiang flew from China to Los Angeles, California, where he stayed with his wife, Chen, at her residence in Pasadena.

19. During the next two days, February 5 and 6, Chiang devised a scheme to sell short SINA common stock in advance of SINA's upcoming press release. Chiang hoped to profit from a drop in SINA's stock price that would predictably occur as a result of the public release of the negative financial performance projections. Chiang told Chen of his plan.

20. In order to conceal his involvement in the transaction, Chiang enlisted Chen to grant him access to a brokerage account she controlled, but which was not in either of their names. Chen knew that trading on this information was a breach of Chiang's duties of trust and confidence to SINA.

21. At 2:00 a.m. on February 7, with the permission and knowledge of his wife, Chiang accessed the account and placed eight separate SINA short sale orders, totaling 200,000 shares.

22. Because of the size and the nature of the orders, the brokerage firm called Chen's residence to confirm whether Chen intended to place all eight orders. Chen spoke to the representative of the brokerage firm and verified that all eight orders were intended.

23. Thereafter, at 9:20 a.m. on February 7, the brokerage firm executed four orders to sell short SINA shares, totaling 70,000 shares, at prices ranging from $27.00 to $27.25, for a total amount of $1,895,000. Due to the limited buying power in the account, the brokerage firm did not execute the four remaining orders.

24. On the evening of February 7, 2005, after the close of the market, SINA issued its press release containing the 2005 first quarter revenue projections. The release stated that the company estimated that the sequential quarter-over-quarter decline in mobile value-added service revenues, based upon the policy changes by China Mobile and the Chinese State Administration,

5

could be between twenty and thirty percent, and that SINA's total revenues for the first quarter of 2005 would be between $43 million and $47 million, representing a $10 million to $14 million decline from the $56.9 million total revenues that SINA achieved in the fourth quarter of 2004.

25.     Following the press release, SINA's share price dropped in after hours trading to $21.60, a 21 percent decline from the day's close of $27.35. SINA opened at $20.23 the following morning, a 26 percent decline from the previous day's close.

26.     Because of the timeliness of the short sales, a representative of the brokerage firm called Chen's residence just after the press release was issued and asked whether Chen or her family had any relationship with SINA. Chen responded that no one in her family had any relationship with SINA.

27.     Three days later, the brokerage firm received a telephone call from an attorney representing Chen. The attorney requested that the SINA short sale transaction be cancelled. The attorney claimed that the orders had been mistakenly placed by the nominee account holder, who happened to be Chen's mother who lived in Taiwan. At no time did the attorney disclose the involvement of Chiang or his relationship to Chen.

28.     The brokerage firm could not cancel the transaction because it had already been executed in the market and settled. Because Chen was adamant about distancing herself from the transaction, the brokerage firm ultimately agreed, as a client accommodation, to allow Chen to surrender the short position in the account she controlled. As soon as the position was moved out of the account, it was covered for a profit of $257,833.07.

## CLAIM FOR RELIEF
## COUNT ONE
### FRAUD IN THE PURCHASE OR SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act**
**[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

29.   The Commission realleges and incorporates by reference paragraphs 1 through 28 above.

30.   On February 3, 2005, Defendant Chiang learned material, non-public information concerning SINA's first quarter 2005 revenue projections. He further knew or recklessly disregarded the fact that he owed SINA a fiduciary duty to maintain that information in confidence until it was publicly disseminated.

31.   In violation of his fiduciary duty to SINA and for his personal benefit, Chiang used that information to trade in the securities of SINA.

32.   By the conduct described above, Chiang, directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT TWO
### FRAUD IN THE PURCHASE OR SALE OF SECURITIES
**Chen Aided and Abetted Chiang's Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

33.   The Commission realleges and incorporates by reference paragraphs 1 through 32 above.

34.   Defendant Chen, knowing that her husband, Chiang, was breaching his fiduciary duty to SINA by using material non-public information to engage in SINA securities transactions, provided substantial assistance to him so that he could engage in those transactions in an account that would conceal his identity.

35.   Based on the foregoing, Chen aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

a) Permanently enjoining Defendants Chen and Chiang, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

b) Ordering Defendant Chiang to disgorge the ill-gotten gains derived from the unlawful trading alleged herein, plus prejudgment interest on that amount;

c) Imposing a civil penalty against Defendant Chiang pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

d) Imposing a bar against Defendant Chiang for a period of five years from serving as an officer or director of a public company pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

e) Imposing a civil penalty against Defendant Chen pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; and

f) Granting such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: 2/7/07

_____
John Reed Stark (DC Bar # 425187)
Thomas A. Sporkin (DC Bar # 444865)
Carolyn-Gail Gilheany
Samuel J. Bezek
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC  20549-5631-B
(202) 551-4892 (Stark)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
U.S. Securities & Exchange Commission

## DEFENDANTS
Daniel Fongnien Chiang
Eva Yi-Fen Chen

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

U.S. Securities & Exchange Commission
100 F. Street, NE
Washington, DC 20036
John Reed Stark, Esq. (202) 551-4892

CASE NUMBER 1:07CV00285

JUDGE: Royce C. Lamberth

DECK TYPE: General Civil

DATE STAMP: 02/08/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (x) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ( ) A. Antitrust
- [ ] 410 Antitrust

### ( ) B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ( ) C. Administrative Agency Review
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ( ) D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### (x) E. General Civil (Other)    OR    ( ) F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [x] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. § 78j(b); 17 C.F.R. 240.10b-5 -- Fraud in the purchase or sale of securities (insider trading).

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE February 8, 2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.